IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| AMBER L. BEARDSLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) CIV-12-760-D |
| v. | ) |
| | ) |
| CAROLYN W. COLVIN, | ) |
|   Acting Commissioner of Social | ) |
|   Security Administration[1], | ) |
| | ) |
| Defendant. | ) |

REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her applications for disability insurance and supplemental security income benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1382. Defendant has answered the Complaint and filed the administrative record (hereinafter TR___), and the parties have briefed the issues. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's decision be affirmed.

---

[1] Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on February 14, 2013. Pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Acting Commissioner Colvin is substituted for former Commissioner Michael J. Astrue as the Defendant in this action. No further action need be taken to continue this action. 42 U.S.C. § 405(g).

I. <u>Background</u>

Plaintiff protectively filed her disability applications on July 18, 2008. At that time, Plaintiff was 27 years old. She alleged she became unable to engage in substantial gainful activity on April 30, 2008, due to bipolar disorder, arthritis, a bulging disc, and degenerative disc disease. She has a twelfth grade education and vocational training in office administration. She previously worked as an administrative assistant, cashier, bill collector, assembly worker, retail catalog associate, and deli cook, but she stated she "started staying home with [her four] children around 2004" and had not worked since then. (TR 146, 174). There is a statement from an individual in the record indicating that he is married to Plaintiff and that he voluntarily pays her $400.00 per month in child support beginning in July 2008. (TR 193).

With respect to her usual activities of daily living, Plaintiff stated that she "care[s] for [her] children throughout [the] day," cooks meals, grocery shops, does laundry with her mother's assistance, takes her children to school, crochets, reads, and watches television. (TR 181-188). Plaintiff estimated that she could lift ten pounds, stand 20 minutes, sit 30 minutes, and walk ½ block. Plaintiff stated she sometimes used a cane, and she related her standing and sitting limitations to degenerative disc disease.

A hearing was conducted before Administrative Law Judge McLean ("ALJ") on November 9, 2010. At this hearing, Plaintiff testified that she last worked as a cashier in 2004, that she was 29 years old, that she lived with her four children, and that she moved to Oklahoma from Tennessee in 2008 to be near her family. Plaintiff testified that she could

not work because of migraine headaches occurring at least three times per week, each lasting a minimum of two days, for which she took medication, sclerosis of the back, previous hip replacement surgery in March 2010, fibromyalgia, problems with discs in her neck, type 2 diabetes for which she took medication, frequent urination at least once an hour, pain requiring the use of a walker and constant shifting of positions, bipolar disorder for which she took medications and regularly saw a counselor, and anxiety attacks occurring two times a week. She estimated she spent 45 minutes to an hour in a recliner and three hours in bed each day and that she could sit for 20 minutes before she needed to stand. She stated she could no longer crochet due to carpal tunnel syndrome and that she was unable to read because she could not concentrate. A vocational expert ("VE") also testified at the hearing.

In the ALJ's decision entered April 13, 2011, the ALJ found that Plaintiff's insured status expired on December 31, 2008. Consequently, to be entitled to receive disability insurance benefits, Plaintiff must show that she was "actually disabled [within the meaning of the Social Security Act] prior to the expiration of his insured status" on December 31, 2008.[2] Potter v. Secretary of Health & Human Servs., 905 F.2d 1346, 1349 (10th Cir. 1990)(*per curiam*); accord, Adams v. Chater, 93 F.2d 712, 714 (10th Cir. 1996); Henrie v. United States Dep't of Health & Human Servs., 13 F.3d 359, 360 (10th Cir. 1993).

---

[2]The ALJ does not make separate findings, however, distinguishing the Plaintiff's ability to work before her insured status expired, which would be relevant to her Title II claim and Title XVI claim, and after her insured status expired, which would be relevant only to her Title XVI claim. Plaintiff has not asserted any error with respect to the coterminous nature of the decision. Thus, the undersigned has not undertaken a review of the medical records and other evidence in a manner that distinguishes between the evidence before or after the insured status expired.

The ALJ determined that Plaintiff had not engaged in substantial gainful activity since November 15, 2005, the date she alleged her disability began. Following the well-established sequential evaluation procedure adopted by the agency, see 20 C.F.R. §§404.1520(b)-(f), 416.920(b)-(f), the ALJ found at step two that Plaintiff had severe impairments due to back problems, "left hip," obesity, diabetes, depression, and anxiety. (TR 17). At the third step, the ALJ found that Plaintiff's impairments did not satisfy or equal the requirements of an impairment deemed disabling *per se* by the agency.

At step four, the ALJ found that despite her impairments Plaintiff had the residual functional capacity ("RFC") to perform sedentary work[3] requiring no more than occasional stair/ramp climbing or stooping, no ladder, rope, or scaffold climbing, and no balancing, kneeling, crouching, crawling, or use of her left lower extremity for operating foot controls. The ALJ also found that Plaintiff had certain mental limitations which restricted her to the performance of simple tasks and to jobs that did not require her to have public contact or perform customer service, although she could relate superficially with supervisors and co-workers for work purposes.

Based on this RFC for work and the VE's testimony, the ALJ found that Plaintiff was not capable of performing her previous jobs. Reaching the fifth and final step, the ALJ found that Plaintiff could perform other jobs available in the economy, including the jobs of sorter,

---

[3] Sedentary jobs are defined as jobs involving lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. A sedentary job involves mostly sitting and may also involve occasional walking and standing in carrying out job responsibilities. 20 C.F.R. §§ 404.1567(a), 416.967(a)

final assembler, and surveillance system monitor, and that she was therefore not entitled to benefits.

With her request for review, Plaintiff submitted additional medical evidence, including a mental RFC assessment from Dr. Feliciano dated March 31, 2011. The Appeals Council stated that it had considered the additional evidence but that the additional evidence did "not provide a basis for changing" the ALJ's decision. (TR 1-2). The Appeals Council denied Plaintiff's request for review, and therefore the ALJ's decision is the final decision of the Commissioner. See 20 C.F.R. §§ 404.981, 416.1481; Wall v. Astrue, 561 F.3d 1048, 1051 (10th Cir. 2009).

II. Standard of Review

In this case, judicial review of the final Commissioner's decision is limited to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010); Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." Wall, 561 F.3d at 1052 (citations, internal quotation marks, and brackets omitted).

III. Medical Source Statement

Plaintiff contends in her first two grounds for relief[4] that the Appeals Council did not follow the correct legal standards in considering the medical source statement from Dr. Feliciano. Specifically, Plaintiff contends that the Appeals Council was required to "explain its reasons for discounting the opinion of Dr. Feliciano" under the treating physician rule and that the Appeals Council's failure to do so constitutes legal error. Defendant Commissioner responds that (1) the physician's medical source statement was not material or relevant because it was not based on objective diagnostic testing and (2) in any event a treating physician analysis is not legally required when a treating physician's opinion is submitted to the Appeals Council as new or additional evidence.

When an ALJ considers the opinion of a claimant's treating physician, the ALJ must follow a specific procedure in analyzing the medical opinion. Generally, an ALJ must give the opinion of an acceptable treating source controlling weight if it is both well-supported by medically acceptable clinical and laboratory diagnostic techniques and consistent with other substantial evidence in the record. Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting SSR 96-2p, 1996 WL 374188, at *2). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id. In that event, the ALJ must determine what weight, if any, should be given to the opinion by considering such factors as:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment

---

[4] It is not clear why Plaintiff presented the same argument under two headings.

> relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Id. at 1031 (quotation omitted). See 20 C.F.R. §§ 404.1527(d), 416.927(d). The ALJ "must give good reasons ... for the weight assigned to a treating physician's opinion" that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight." Watkins, 350 F.3d at 1300 (quotations omitted). The ALJ must also set forth specific, legitimate reasons for completely rejecting an opinion of an acceptable treating source. Id. at 1301.

Dr. Feliciano's medical source statement, though signed and dated prior to the ALJ's decision, was not submitted to the ALJ. Rather, Plaintiff first submitted Dr. Feliciano's medical source statement to the Appeals Council. Generally, "the Appeals Council must consider additional evidence offered on administrative review - after which it becomes a part of [the] record on judicial review - if it is (1) new, (2) material, and (3) related to the period on or before the date of the ALJ's decision." Krauser v. Astrue, 638 F.3d 1324, 1328 (10th Cir. 2011).

In this case, the Appeals Council accepted the new evidence submitted by Plaintiff, including Dr. Feliciano's medical source statement, and stated that it had considered the new evidence but that it did "not provide a basis for changing" the ALJ's decision. (TR 1-2). It

7

appears from this statement that the Appeals Council considered the new evidence but did not find it to be material such that it warranted reversal of the Commissioner's final decision.

The medical source statement that was made part of the record by the Appeals Council consists of Dr. Feliciano's responses on a "Mental Impairment Questionnaire (RFC & Listings)." On this form, Dr. Feliciano states that she began treating Plaintiff in July 2008, that Plaintiff was diagnosed with major depressive disorder, post-traumatic stress disorder, and tourette's syndrome. Dr. Feliciano noted a "Current GAF" of 66 and a "Highest GAF Past year" of 65.[5] In cryptic language, Dr. Feliciano states that Plaintiff was "not able to take care of her babies when first diagnosed. Until getting on meds, continues to have problems." (TR 591). Dr. Feliciano stated that Plaintiff's prognosis was "[h]elping keep her stable w[ith] meds [and] weekly counseling for the rest of her life." (TR 592). The psychiatrist also stated that Plaintiff's mental condition exacerbated her pain because "when manic or depressed pain increases in severity. Puts her in bed. Unable to handle stress." (TR 592). Dr. Feliciano repeatedly stated that Plaintiff was "[u]nable to work due to mental [and] physical problems" and check-marked boxes indicating that Plaintiff had poor or no ability to perform most mental work-related functions. (TR 593-594). Dr. Feliciano also check-

---

[5]The diagnosis of mental impairments "requires a multiaxial evaluation" in which Axis I "refers to the individual's primary clinical disorders that will be the foci of treatment," Axis II "refers to personality or developmental disorders," Axis III "refers to general medical conditions," Axis IV "refers to psychosocial and environmental problems," and Axis V "refers to the clinician's assessment of an individual's level of functioning, often by using a Global Assessment of Functioning (GAF), which does not include physical limitations." Schwarz v. Barnhart, No. 02-6158, 2003 WL 21662103, at *3 fn. 1 (10th Cir. July 16, 2003)(unpublished op.)(citing the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (DSM IV)(4th ed. 1994) at 25-32).

marked boxes indicating Plaintiff had "[e]xtreme" limitation in activities of daily living, "[m]arked" difficulties in maintaining social functioning, "[c]onstant" deficiencies of concentration, persistence, or pace, and "[c]ontinual" episodes of decompensation in work or work-like settings. (TR 595). Dr. Feliciano stated that Plaintiff also had other limitations, including a "[l]imited ability to sit stand, walk, lift, bend, stoop, difficulty hearing, difficulty speaking, temperature extremes [sic]." (TR 595).

Where the form asked the physician to describe the clinical findings "including results of mental status examination" supporting the severity of the impairment, Dr. Feliciano states only "[h]igh score not possible without proper meds. Clt unable to work due to mental [and] physical capabilities." (TR 591). This brief, vague statement does not set forth adequate support for Dr. Feliciano's opinion that Plaintiff is disabled, and the statement is not consistent with Dr. Feliciano's assessment that Plaintiff was functioning with a GAF of 65 or 66. A GAF of 65 indicates the presence of "[s]ome mild symptoms (e.g. depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning . . but generally functioning pretty well, has some meaningful interpersonal relationships." DSM IV at 34.

Nor do Dr. Feliciano's treatment records (TR 264-266, 566-578), which were in the record at the time of the ALJ's decision, contain clinical findings that are consistent with the psychiatrist's opinion. In those records, Dr. Feliciano noted repeatedly that Plaintiff's mental impairments were "stable" on medications, that Plaintiff exhibited normal attention and concentration and no memory or speech problems, that Plaintiff reported her anti-depressant

9

medication was "working," and that Plaintiff reported she was "doing well" or "doing better" on medications. (TR 566-577). Thus, there is substantial evidence to support the Appeals Council's finding that Dr. Feliciano's medical source statement did not provide material evidence which would undermine the Commissioner's final decision.

There is no clear guidance from the Tenth Circuit Court of Appeals concerning the issue of whether the Appeals Council must conduct a treating physician analysis of a medical source statement submitted to it as new or additional evidence. See Stills v. Astrue, 476 Fed.Appx. 159, 161-162 (10th Cir. 2012)(unpublished op.)(noting issue of whether Appeals Council must conduct treating physician analysis of medical source statement submitted to it as additional evidence "does not appear to be settled in this circuit")(citing two unpublished opinions in Harper v. Astrue, 428 Fed.Appx. 823 (10th Cir. 2011), and Robinson v. Astrue, 397 Fed.Appx. 430 (10th Cir. 2010)).

In Harper, the Tenth Circuit concluded that the Appeals Council must conduct a treating physician analysis of a treating physician's opinion where the physician had "imposed significant restrictions on [the claimant's] ability to work that were never discussed by either the ALJ or the Appeals Council." Harper, 428 Fed.Appx. at 825-827. See also Aragon v. Apfel, 166 F.3d 1220 (Table)(10th Cir. 1998)(unpublished op.)(finding Appeals Council's statement that treating physician's opinion did not provide basis for changing ALJ's decision was not adequate because it did not give specific, legitimate reasons necessary to justify rejection of opinion). In Robinson, the Tenth Circuit concluded that the agency was not required to conduct a specific analysis of a treating physician's physical RFC

10

assessment submitted first to the Appeals Council where the Appeals Council stated that it had reviewed the RFC assessment and that it provided no basis for changing the ALJ's decision.

In light of the uncertainty surrounding the issue raised by Plaintiff and in light of the inconsistencies between Dr. Feliciano's medical source statement and her treatment records and the inconsistencies in the medical source statement itself as well as the psychiatrist's failure to provide objective clinical findings to support her opinion that Plaintiff is disabled, there is no legal error warranting reversal or remand of the Commissioner's decision.

IV. RFC Assessment

Plaintiff contends that there is not substantial evidence to support the ALJ's RFC assessment. To the extent that this argument is based on Dr. Feliciano's medical source statement and the opinion concerning Plaintiff's RFC therein, the previous discussion is fatal to this argument. No error occurred with respect to the ALJ's failure to "include[ ] all of Dr. Feliciano's limitations concerning [Plaintiff's] mental impairments" in the RFC assessment.

Plaintiff also contends that the ALJ failed to include in the RFC assessment "all of the Claimant's medically determinable non-exertional impairments due to her chronic pain, headaches, and psychologically based symptoms." Plaintiff's Opening Brief, at 10. Plaintiff does not, however, describe any medical evidence supporting additional mental or physical functional limitations not included in the RFC assessment. Other than Dr. Feliciano, whose opinion were considered by the Appeals Council and properly found not to be material evidence which undermined the Commissioner's final decision, no treating or examining

physician imposed work-related limitations on Plaintiff.

Contrary to Plaintiff's suggestion that the RFC assessment was "conclusory," the ALJ's decision sets forth a thorough review of the relevant medical and non-medical evidence, including Plaintiff's testimony about her symptoms and limitations, the results of MRI and x-ray testing, and the treatment records of Dr. Feliciano, Dr. Alhaj, Dr. Motwani, Dr. McDaniel, Dr. Beson, Dr. Miller, and the reports of the non-examining consultative physicians. Nor was the ALJ required to include "all the claimant's signs and symptoms in the RFC," as Plaintiff argues. Plaintiff's Opening Brief, at 16. The ALJ imposed mental limitations in the RFC assessment that are consistent with the October 2008 functional capacity assessments by Dr. Janice Smith, Ph. D., a non-examining medical consultant. (TR 27, 269, 281). The ALJ imposed physical limitations in the RFC assessment that are more restricted than those found by Dr. Thurma Fiegel, M.D. (TR 27, 285-292). Plaintiff's unsupported assertion that the ALJ's RFC assessment was faulty or that the ALJ did not consider probative evidence is without merit.

V. Credibility

Plaintiff contends that the ALJ did not properly evaluate her credibility with respect to her allegation of disabling pain. Plaintiff concedes that the ALJ provided reasons for discounting her credibility, but Plaintiff alleges those reasons are inadequate or contrary to the record. Defendant Commissioner responds that the ALJ's credibility determination was supported by valid reasons.

The assessment of a claimant's RFC at step four generally requires the ALJ to "make

a finding about the credibility of the [claimant's] statements about [her] symptom(s) and [their] functional effects." Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at * 1 (1996). "Credibility determinations are peculiarly within the province of the finder of fact, and [courts] will not upset such determinations when supported by substantial evidence." Diaz v. Secretary of Health & Human Servs., 898 F.2d 774, 777 (10th Cir. 1990). But an ALJ must "consider the entire case record and give specific reasons for the weight given to the individual's statements" in determining credibility. SSR 96-7p, 1996 WL 374186, at * 4 (1996). Credibility findings must "be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." McGoffin v. Barnhart, 288 F.3d 1248, 1254 (10th Cir. 2002)(quotations and alteration omitted).

In making the credibility determination, the ALJ considered many of the relevant factors. See SSR 96-7p, 1996 WL 374186, at * 3 (citing factors relevant to credibility determination, including claimant's daily activities; the location, duration, and intensity of the claimant's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; any treatment other than medications the individual receives or has received for pain or other symptoms; any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms); Hamlin v. Barnhart, 365 F.3d 1208, 1220 (10th Cir. 2004)(stating ALJs "should consider" factors set forth in SSR 96-7p). An ALJ is not, however, required to conduct a

"formalistic factor-by-factor recitation of the evidence." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). Employing "common sense" as a guide, the ALJ's decision is sufficient if it "sets forth the specific evidence he [or she] relies on in evaluating the claimant's credibility." Id.; Keyes-Zachary v. Astrue, 695 F.3d 1156, 1167 (10th Cir. 2012).

Other factors that may be relevant to the credibility determination include the claimant's "medication[s] and [their] effectiveness, extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of [the claimant's] medical contacts, the nature of [the claimant's] daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, . . . and the consistency or compatibility of nonmedical testimony with objective medical evidence." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). See also 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3)(listing factors relevant to symptoms that may be considered by ALJ).

The ALJ provided multiple reasons for discounting the credibility of Plaintiff's allegation that she was disabled due to pain and other symptoms. First, the ALJ noted that agency records indicated Plaintiff had accepted employment in June 2007 even though she alleged that she was unable to work beginning in November 2005. The record supports this statement. (TR 39, 157). The ALJ also noted that Plaintiff testified she was only able to sit for 5 to 10 minutes at a time but that she also stated inconsistently that she drove her children to and from school on a daily basis. The record supports this statement. (TR 40, 59, 184). The ALJ also noted that Plaintiff testified her mother does the grocery shopping because she can only walk for 5 to 10 minutes although she reported that she regularly shops at Wal-Mart.

The record supports this statement. (TR 58, 185, 186) The ALJ noted that Plaintiff quit working to stay home with her children. The record supports this statement. (TR 34, 39, 146). The ALJ also noted Plaintiff's statement to one of her treating physicians that her medications managed about 80 % of her pain. (TR 26). The record supports this statement. (TR 492, 499).

Because the ALJ's credibility findings "are closely and affirmatively linked to substantial evidence," Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005), the determination should not be disturbed. Moreover, the ALJ incorporated many of Plaintiff's subjective statements concerning her mental and physical limitations into the RFC assessment, including lifting and postural limitations and her testimony that she has difficulty concentrating due to pain and the effects of her medications. Plaintiff's argument with respect to the ALJ's credibility determination asks this Court to reweigh the evidence and to substitute the Court's judgment for that of the Commissioner, and the Court should decline to do so. Id. at 1172.

## RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's applications for benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before _____June 6th_____, 2013, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to

this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this       17th       day of       May      , 2013.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE